Jeremy D. Michaels
Wyoming Bar Number 5-1655
Michaels & Michaels, PC
222 South Gillette Ave., Ste. 701
Gillette, Wyoming 82716
Phone: (307) 682-2037
Fax: (307) 687-1737
Email: jeremy@wylaw.net

Ryan P. Healy
Wyoming Bar Number 6-3509
Healy Law Firm, LLC
49 S. Main Street
P.O. Box 605
Sheridan, WY 82801
Phone: (307) 672-7437
Fax: (307) 672-0187
Email: ryan@healylawwyo.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 NOV 20  AM 9: 47

STEPHAN HARRIS, CLERK
CASPER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| The Wrongful Death Estate of J.W.,<br>a deceased minor child,<br>by and through Brandon T. Wegner, as<br>Wrongful Death Representative,<br><br>   Plaintiff,<br><br> vs.<br><br>FCA US LLC,<br><br>   Defendant. | Civil Action No. 17CV191-J |

## PLAINTIFF'S COMPLAINT

Receipt # CA5001991
Summons: 1 issued
_____ not issued


COMES NOW, Brandon Wegner (hereinafter referred to as "Plaintiff"), and respectfully files this Complaint against FCA US LLC (hereinafter referred to as "Defendant"), and in support hereof would state and show the following:

## I. Parties

1.    Plaintiff is the surviving, step-father of J.W., a deceased minor child. Plaintiff resides in and is a citizen of Sheridan, Wyoming.

2.    Plaintiff is the duly appointed and lawfully acting Wrongful Death Representative of the Estate of J.W., having been appointed by Wyoming Fourth Judicial District Court Judge John G. Fenn, on March 30, 2016.

3.    Defendant, FCA US, LLC is an entity formerly known as Chrysler Group LLC, incorporated in Delaware, with its principal place of business in Auburn Hills, Michigan. Defendant's sole member is FCA North American Holdings, LLC, an entity incorporated in Delaware with its principal place of business in New York. FCA North America Holding LLC's sole member is Fiat Chrysler Automobiles N.V., a publicly traded company incorporated in the Netherlands with it principal place of business in London. Service of process upon this Defendant may be had by serving its registered agent for service, CT Corporation System, at 1908 Thomes Avenue, Cheyenne, WY 82001.

## II. Jurisdiction

4.    Plaintiff restates and realleges the above paragraphs 1 - 3 as if fully set forth herein.

5.    This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

6.    The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Facts

7.   Plaintiff restates and realleges the above paragraphs 4 - 6 as if fully set forth herein.

8.   On or about November 24, 2015, J.W., a minor child, was riding in a 2004 Jeep Liberty (VIN# 1J4GL48K64W223272), traveling eastbound on Interstate 90 in Sheridan County, Wyoming.  J.W., a deceased minor, was a passenger.

9.   The subject vehicle was designed by Defendant.

10.   The subject vehicle was manufactured by Defendant.

11.   The subject vehicle was also assembled and tested by Defendant.

12.   While traveling, control of the subject vehicle was lost, causing the vehicle to roll and overturn.

13.   The forward-facing child seat was properly secured to the vehicle using the vehicle's built-in LATCH system and the child seat's tether strap.

14.   However, despite being properly seated and properly wearing the available seat belt, J.W. sustained fatal injuries when the vehicle failed to protect him because it violated several crashworthiness principles.

15.   There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

1.   Maintain survival space;

2.   Provide proper restraint throughout the entire accident;

3.   Prevent ejection;

4.   Distribute and channel energy; and

5.   Prevent post-crash fires.

16.   When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960s, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

17.   The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

18.   Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

## IV. Cause(s) of Action as to Defendant

19.   Plaintiff restates and realleges the above paragraphs 7 - 18 as if fully set forth herein.

20.   It was entirely foreseeable to, and well-known by Defendant that accidents and incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

21.   The fatal injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

22.   Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

23.   As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

24.   Defendant knew or should have known of safer alternative designs which would have prevented the injuries complained of herein.

25.   In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

   a.   The rear seat used a split 70/30 seat configuration that incorporated a child seat LATCH but the seat itself lacked an inboard latch which rendered the seat weak, structurally unsound, and/or incapable of withstanding loads from any type of accident event;

   b.   The rear seat structure failed to utilize any type of inboard latch assembly that would prevent the seat from twisting or deforming counterclockwise;

   c.   The rear seat structure lacked inboard structural integrity;

   d.   The rear seat structure lacked dual locks like the front seats contained so that the inboard and outboard seat attachments had equal strength;

   e.   The rear seat failed to provide proper restraint;

f.   The rear seat structure failure changed the seatbelt geometry;

g.   The rear seat structure failure overloaded the child seat, seatbelt webbing;

h.   The rear seat structure failure prevented the child seat from meeting its designed restraint utility;

i.   The rear seat structure provided no utility or functionality once the inboard portion of the seat rotated counterclockwise;

j.   The rear seat structure failure rendered the other safety systems inside the vehicle useless;

k.   The seat structure failure rendered the child seat safety systems useless;

l.   The vehicle failed to contain ejection mitigation glass like many other platforms used in the front and/or front and rear seating positions;

m.   The vehicle failed to contain non-tempered glass like many other platforms used in the front and/or front and rear seating positions;

n.   The vehicle failed to contain side airbags that function as an ejection mitigation system;

o.   The vehicle violated principles of crashworthiness;

p.   The vehicle failed to provide equal protection to the rear seated occupants as it did the front seated occupants;

q.   The vehicle was not properly tested using restrained ATD's in rollover testing scenarios;

r.   The vehicle was not subjected to FEM, FEA, finite element modeling where different seat configurations, different seat restraints, different

glass material, different seat structural material, different seat latch/assemblies evaluated;

s.   The vehicle was not subjected to LSDYNA and/or MADYMO analysis where different seat configurations, different seat restrains, different glass material, different seat structural material, different seat latch/assemblies was evaluated;

t.   The vehicle was not subjected to simulated rollover events to evaluate alternative seat and/or glass designs;

u.   The vehicle was not subjected to rigorous engineering analysis; and/or

v.   The defects and negligence were the direct, producing, substantial factor and/or proximate cause of the fatal ejection and damages.

26.   Defendant was also negligent in the design, manufacture, assembly, marketing, and/or testing of the vehicle in question.

27.   In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

28.   Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

29.   If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

30.   If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

31.   A company that does not conduct a proper engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone is negligent.

32.   Most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public." Accordingly, since paramount means "superior to all others", all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles.

33.   Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan, or some other country and chose not to offer those safety features to American consumers.

34.   Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

35.   When Defendant designed the subject vehicle, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicles. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

36.   Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis it performed.

37.   However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

38.   Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

39.   The foregoing acts and/or omissions, defects, and/or negligence of Defendant were the producing, direct, proximate, and/or legal cause of the fatality and Plaintiff's damages.

## V. Damages to Plaintiff

40.   Plaintiff restates and realleges the above paragraphs 19 - 39 as if fully set forth herein.

41.   As a result of the acts and/or omissions of Defendant, Plaintiff has suffered past and future; loss of care, maintenance, support, services, advice, counsel, reasonable contributions of pecuniary value, loss of companionship and society, loss of consortium, and mental anguish as a result of the death of J.W.

42.   As a result of the acts and/or omissions of Defendant, Plaintiff has become obligated to pay reasonable and necessary funeral, and burial expenses as a result of the fatal injuries to J.W.

43.   The above and foregoing acts and/or omissions of the Defendant, resulting in the fatal injuries to J.W. have caused actual damages to Plaintiff in excess of the minimum jurisdictional limits of this Court.

## VI. Prayer

44.   For the reasons presented herein, Plaintiff prays that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against Defendant for:

     a.   actual damages;

     b.   prejudgment and post-judgment interest beginning November 24, 2015;

     c.   costs of suit; and

     d.   all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

45.   Plaintiffs demand a trial by jury.

Respectfully submitted,

_____   11/15/2017

Jeremy D. Michaels, WSB #5-1655
Michaels & Michaels, PC
222 S. Gillette Ave., Ste. 701
Gillette, Wyoming 82716
Phone: (307) 682-2037
Fax: (307) 687-1737
Email: jeremy@wylaw.net


_____   11/17/2017

Ryan P. Healy, WSB #6-3509
Healy Law Firm, LLC
49 S. Main Street
P.O. Box 605
Sheridan, WY 82801
Phone: (307) 672-7437
Fax: (307) 672-0187
Email: ryan@healylawwyo.com


**Attorneys for Plaintiff**